FILED
in the Middle District of
North Carolina
February 25, 2022
7:29 pm
Clerk, US District Court
By: _____kg_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KEITH DOUGLAS BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20CV1151 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Keith Douglas Brown ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on February 4, 2016. (Tr. at 17.)[2] His application was denied initially (Tr. at 96-111, 176-84) and upon reconsideration (Tr. at 112-27, 188-97). Thereafter, Plaintiff requested an administrative hearing de novo before an

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

Administrative Law Judge ("ALJ"). (Tr. at 199-213.) On April 4, 2018, Plaintiff, along with his attorney, attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 150.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 162-63.) However, on May 9, 2019, the Appeals Council remanded Plaintiff's case for further proceedings. (Tr. at 168-73.) In its remand order, the Appeals Council specifically directed the ALJ to (1) consider the findings set out in a prior administrative decision, dated August 2015, in accordance with Acquiescence Ruling 00-1(4), and (2) consider whether Plaintiff's impairments met a listing in accordance with Acquiescence Ruling 15-1(4). (Tr. at 15, 168-73.)

On January 30, 2020, Plaintiff appeared and testified at his third administrative hearing, the second regarding the 2016 SSI application now at issue. (Tr. at 15.) Plaintiff was again represented by an attorney, and an impartial vocational again appeared and testified. (Tr. at 15.) On May 26, 2020, the ALJ issued a decision concluding that Plaintiff was not disabled under the Act between his application date of February 4, 2016, and the date of the decision (Tr. at 24-25), and, on December 1, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir.

3

1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two,

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged application date. The ALJ therefore concluded that Plaintiff met his

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> diabetes with neuropathy, back pain, substance-induced mood disorders, and substance use disorders[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform sedentary work with the following, further limitations:

> [Plaintiff] can frequently, but not constantly operate foot pedals, finger, and handle. He can occasionally balance, climb stairs, stoop, crouch, crawl, or kneel. [Plaintiff] is limited to no concentrated exposure to hazards, including ladders, unprotected heights, or moving machinery. He can interact appropriately with others, such as coworkers and supervisors, on an occasional basis. Contact with the public should not be a regular duty of his job. The interaction has to be on a basic level commensurate with simple, repetitive tasks.

(Tr. at 19-20.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 23.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 24-25.)

Plaintiff now challenges the ALJ's RFC assessment in three respects. He first contends that the ALJ failed to properly consider the effects of Plaintiff's limitations in maintaining concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Second, Plaintiff contends that the ALJ failed to "discuss facts in evidence that contradict the ALJ's conclusion," specifically with respect to the findings of the State agency psychological consultants. (Pl.'s Br. [Doc. # 12] at 12.) Finally, Plaintiff

6

challenges the ALJ's evaluation of Plaintiff's symptoms, contending that the ALJ erred by using "vague references in the medical records in order to conclude that the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical and other evidence in the record." (Pl.'s Br. at 14.) Because Plaintiff's first two contentions heavily overlap, the Court addresses them together.

A. Concentration, Persistence, and Pace, and State Agency Consultants' Findings

As noted above, the ALJ determined at step three of the sequential analysis that Plaintiff has moderate limitations in his concentration, persistence, and pace. In Mascio v. Colvin, the Fourth Circuit explained that, where moderate limitations in concentration, persistence, and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

7

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

In the present case, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 19.) In particular, the ALJ noted Plaintiff's reports "that he could not pay attention long," "had issues with completing tasks and concentration," and "does not finish what he starts." (Tr. at 19.) Later in the sequential analysis, the ALJ formulated a mental RFC indicating that Plaintiff's work interactions needed "to be on a basic level commensurate with simple, repetitive tasks." (Tr. at 20.) Plaintiff now argues that, in making this RFC finding, the ALJ did not fully account for Plaintiff's ability to stay on task in light of his moderate difficulties with concentration, persistence, or pace.

As set out above, remand is not required under Mascio where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. In this case, the ALJ discussed Plaintiff's substance-induced mood disorders and his improvement with substance abuse treatment and concluded that Plaintiff's "mental impairments would be accounted for with simple tasks and limited interactions with others." (Tr. at 22.) In reaching this conclusion, the ALJ specifically considered medical opinion evidence from two State agency psychological consultants, Drs. Betty Bradley Aldridge and Arne Newman, both of whom found Plaintiff moderately limited in terms of concentration, persistence, and pace. (Tr. at 23, 101, 117.) The ALJ assigned "significant weight" to these opinions, explaining that "their assessment[s] that [Plaintiff] would be limited to simple tasks and have limitations in interacting with others is consistent with treatment notes documenting his substance use and substance-induced mood disorder." (Tr. at 23.) Both consultants listed "sustained

9

concentration and persistence limitations" among Plaintiff's symptoms and found that Plaintiff's "ability to maintain attention and concentration for extended periods" was "moderately limited." (Tr. at 102, 106, 118, 122.) Nevertheless, both consultants ultimately concluded that, despite these limitations, Plaintiff remained capable of performing simple tasks.

Dr. Aldridge's mental RFC assessment provides that Plaintiff was moderately limited in his ability to carry out detailed instructions and was moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. at 106.) However, Dr. Aldridge further opined that Plaintiff was "[n]ot significantly limited" in his ability to perform at a consistent pace, and when asked to "[e]xplain in narrative form the sustained concentration and persistence capacities and/or limitations," Dr. Aldridge stated that:

> [Plaintiff] appears capable of maintaining concentration, persistence and pace while performing simple tasks.

(Tr. at 107.) In providing a further Additional Explanation, Dr. Aldridge found that:

> [Plaintiff is] able to understand and remember instructions for simple tasks
> [Plaintiff is] able to sustain concentration and persistence for simple tasks
> [Plaintiff is] able to interact appropriately
> [Plaintiff is] able to adapt to routine changes
>
> . . . [Plaintiff] appears to retain the mental capacity for the sustained performance of relatively simple routine repetitive tasks in relatively undemanding work settings that do not require intensive interpersonal relating and that require no more than two hours at a time of maintenance of attention and concentration.

(Tr. at 107.) The ALJ incorporated these limits into the RFC, by limiting Plaintiff to interactions on a "basic level" involving "simple, repetitive tasks." (Tr. at 20.) To the extent that Dr. Aldridge also suggested "relatively undemanding work settings that do not require

10

intensive interpersonal relating," the ALJ included the limitation to occasional interaction with coworkers and supervisors and no regular duties involving contact with the public. (Tr. at 20.) Plaintiff nevertheless contends that Dr. Aldredge's limitation to concentrating no more than two hours at a time conflicts with the RFC. However, the ability to concentrate for two hours at a time falls within the general requirements for ordinary work, as defined by the SSA's own policies and procedures.[5] Thus, the two-hour period included by Dr. Aldridge merely clarified that Plaintiff's mental impairments do not prevent him from performing the normal concentration requirements of sustained work. As such, the ALJ was not required, under Mascio, to treat Dr. Aldridge's finding as an additional limitation that required further incorporation or explanation.

The State Agency consultant on reconsideration, Dr. Newman, similarly found that Plaintiff was moderately limited in his ability to carry out detailed instructions and was moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. at 122.) He also further opined that Plaintiff was "[n]ot significantly limited" in his ability to perform at a consistent pace, and when asked to "[e]xplain in narrative form the sustained concentration and persistence capacities and/or limitations," Dr. Newman stated that:

> [Plaintiff] appears capable of maintaining concentration, persistence and pace while performing simple tasks.

(Tr. at 123.) In providing a further Additional Explanation, Dr. Newman similarly found that:

---

[5] The Agency's Program Operations Manual System ("POMS") provides that any job, including unskilled work, requires "[t]he ability to maintain concentration and attention for extended periods (the approximately 2–hour segments between arrival and first break, lunch, second break, and departure)," POMS DI 25020.010 B.2.a., and further lists the ability to "maintain attention for extended periods of 2–hour segments" among "Mental Abilities Critical For Performing Unskilled Work," POMS DI 25020.010 B.3.d. See also, e.g., Tucker v. Saul, Case No. 1:18CV481, 2019 WL 3581795 at *5-*6 (M.D.N.C. Aug. 6, 2019).

11

> [Plaintiff is] able to understand and remember instructions for simple tasks
> [Plaintiff is] able to sustain concentration and persistence for simple tasks
> [Plaintiff is] able to interact appropriately
> [Plaintiff is] able to adapt to routine changes

(Tr. at 107.) With regard to social interactions, Dr. Newman found that Plaintiff was moderately limited in his ability to interact appropriately with the general public and further explained that Plaintiff "appears capable of basic social interaction." (Tr. at 123.) These findings are addressed in the RFC, limiting Plaintiff to interactions on a "basic level" involving "simple, repetitive tasks" with occasional interaction with coworkers and supervisors and no regular duties involving contact with the public.

Plaintiff nevertheless argues that, despite the ALJ's assertion that she assigned significant weight to the State agency psychological consultants' findings, the RFC only incorporates the consultants' findings regarding Plaintiff's social limitations and not Dr. Aldridge's further findings that Plaintiff could perform simple routine repetitive tasks in relatively undemanding work setting (Tr. at 107), nor Dr. Newman's findings that Plaintiff could understand and remember instructions for simple tasks and sustain concentration and persistence for such tasks (Tr. at 123). However, the RFC includes the ALJ's determination that workplace "interaction has to be on a basic level commensurate with simple, repetitive tasks." (Tr. at 20.) Nothing suggests that this determination conflicted with either or both of the consultants' findings. As set out above, both consultants ultimately determined that Plaintiff could perform simple, repetitive tasks despite his moderate limitations in concentration, persistence, and pace. Accordingly, the limitation to simple, repetitive tasks in the RFC assessment adequately encompasses the psychological consultants' conclusions on this point. The ALJ's explanation and her reliance on the State Agency psychological

Case 1:20-cv-01151-TDS-JEP   Document 23   Filed 02/25/22   Page 12 of 18

consultants are sufficient to allow the Court to follow the ALJ's reasoning, and substantial evidence supports the ALJ's determination.

B.  Subjective complaints

In his final challenge, Plaintiff contends that the ALJ impermissibly relied upon references in the medical record to Plaintiff "doing well" or being in "stable" condition to discredit the alleged severity of his mental symptoms. (Pl.'s Br. at 14.) To the extent this is intended as a challenge to the ALJ's evaluation of Plaintiff's symptoms, the Court notes that under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit recently clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic

13

techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Arakas, 983 F.3d at 95–96. Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about his symptoms, in order to evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's symptoms limit his ability to perform basic work activities.

Here, Plaintiff presents no evidence that the ALJ required objective support for his complaints. However, he contends that the ALJ mischaracterized the import of "stable" mental health findings and, in doing so, failed to fully and properly consider the medical evidence of record. Specifically, Plaintiff argues that "stability over the whole record is . . . demonstrated in the consistent mental status notes of depressed and anxious mood." (Pl.'s Br. at 14 (citing Tr. at 1464-1612, 1710-1801).)

It is undisputed that treatment notes indicating that a patient is "stable" or "doing well" must be considered in context. See Brascher v. Astrue, No. 3:10CV256, 2011 WL 1637029, at *7 (E.D.Va. Mar. 11, 2011) ("[T]he phrase 'doing well' is relative and should be viewed in the context of the illness a person suffers from" and "it is not sufficient to focus on the simple phrase of 'doing well' while disregarding the remainder of the physician's report."); Kellough v. Heckler, 785 F.2d 1147, 1153 (4th Cir. 1986) ("'Feels well' and 'normal activity' must be read in context."). Nevertheless, the ALJ in this case relied on far more than stable mental health findings when considering Plaintiff's subjective allegations and mental RFC. As set out

14

in subsection A above, the ALJ also relied on the findings of the State agency psychological consultants, who considered Plaintiff's medical records as a whole, in finding Plaintiff limited to simple tasks and little social interaction. The ALJ further reviewed Plaintiff's mental health treatment records after the consultants' reports in great detail. In particular, the ALJ noted that, despite Plaintiff's reports that he received treatment for depression and anxiety, the mental health visits he identified "were actually substance use focused." (Tr. at 22 (citing Tr. at 1466-1612).) The ALJ went on to explain that Plaintiff's treatment notes show that he "was being treated for substance abuse issues with Suboxone, and those records note that he was improving with that treatment though he was not at goal." (Tr. at 22.) The ALJ also detailed the detox notes in question, recounting as follows:

> On November 15, 2017 [Plaintiff] presented for opiate addiction along with depression and anxiety, and his substance use included benzodiazepines, cannabinoids, cocaine, hydrocodone, and oxycodone. [Tr. at 1609.] **He was assessed with substance-induced mood disorder, opioid-induced anxiety disorder, and polysubstance abuse** and started on Suboxone. [Tr. at 1611.] March 2018 treatment notes show [Plaintiff] requesting 2 mg Xanax, which was denied, and he was upset that they would not prescribe it. [Tr. at 1297.] In April 2018, he was again informed that his Xanax would not be increased. [Tr. at 1294.] [Plaintiff] continued going for substance abuse treatment taking Suboxone throughout 2018 and 2019, and those record show him improving. [Tr. at 1466-1612.] [A] March 2019 mental health record show[s] he was treated for panic disorder, but he was noted to be stable. [Tr. at 1617,] July 2019 progress notes show he was prescribed a 10-day dosage on clonazepam for anxiety, but would need his primary care provider to continue that medication. [Tr. at 1478.]

(Tr. at 22 (emphasis added).)

Both the ALJ's discussion and the underlying treatment notes clearly support the ALJ's step two finding that Plaintiff's mental disorders result from or are related to substance use during the relevant period. In fact, Plaintiff's mental health records describe his anxiety as

15

"Opioid-induced anxiety disorder with onset during withdrawal." (Tr. at 1611.) The treatment records reflect regular visits with Dr. Stephen Campbell beginning in November 2017, with the following History of Present Illness:

> The patient is a 46 year old male who presents today for opiate addiction. Substance use includes benzodiazepines, cannabinoids, cocaine, hydrocodone, and oxycodone. Usage routes include oral, smoking, and intranasal. The first time the patient used they were 15 years old. Symptoms include anxiety, emotional stress, cravings, withdrawal and sleep disturbances. The patient describes this as worsening. Symptoms are exacerbated by cravings, stress, fatigue, fear of withdrawal and depression. Associated symptoms include drowsiness. Pertinent medical history includes anxiety disorder, chemical dependency and major depression, while pertinent medical history does not include prior chemical dependency treatment. Pertinent social history includes family difficulties, social difficulties and financial difficulties.
>
> Additional reasons for visit:
>
> <u>Depression</u> is described as the following:
> Symptoms include loss of interest, depressed mood, fatigue, sense of failure, poor concentration, indecisiveness, appetite change, poor sleep, irritability and anxiety, while symptoms do not include suicidal ideation or suicide attempt. Symptoms are exacerbated by emotional stress, fatigue and family stressors. Pertinent medical history includes depression, anxiety disorder and drug abuse.
>
> <u>Anxiety</u> is described as the following:
> Symptoms include anxiety, difficulty concentrating, excessive worry, fatigue, insomnia, irritability, nervousness and sleep disruption. The patient describes this as worsening. Symptoms are exacerbated by illicit drug use, fatigue, lack of sleep, stress and financial problems. Pertinent medical history includes illicit drug abuse, anxiety disorder and major depression.

(Tr. at 1609.) On examination, he was "alert and oriented x3 with no impairment of recent or remote memory" but with a mood and affect described as "anxious and depressed." (Tr. at 1610.) He tested positive for THC. (Tr. at 1607.) Dr. Campbell diagnosed Plaintiff with "Substance induced mood disorder", "Opioid-induced anxiety disorder with onset during withdrawal", and "Polysubstance abuse." (Tr. at 1611.) Plaintiff was started on Suboxone,

16

and Dr. Campbell discussed treatment options for his substance-induced mood disorder and opioid-induced anxiety disorder, including medication management, referral, and observation, with a recommendation to avoid triggers and to establish care with a psychiatrist for counseling.[6] (Tr. at 1611.) These notes and diagnoses are repeated in weekly, then monthly, treatment visits with Dr. Campbell for the next two years. (Tr. at 1476-1608, 1714-1721.) Although Plaintiff correctly notes that "[t]his is not a case in which the ALJ [found] that, absent substance abuse, [Plaintiff] would have been able to perform substantial gainful activity" (Pl.'s Reply Br. [Doc. #22] at 2), this argument is ultimately beside the point. The ALJ related that Plaintiff's substance abuse issues and treatment continued throughout the time period at issue and improved with treatment. (Tr. at 22.) Although the records cited by Plaintiff also indicate that Plaintiff remained anxious and depressed during this time, particularly as his substance use continued, Plaintiff suggests no further limitations resulting from his mental health symptoms, and none are apparent from the record.[7]

---

[6] Plaintiff did see a psychiatrist on December 6, 2018, and at that visit, Plaintiff's chief complaint was recorded as "I was told I had to see a psychiatrist to get my Xanax back." (Tr. at 1619.) At his next visit on March 7, 2019, the treatment record reflects that Plaintiff reported that he was "so much better" and the record reflects "Panic [disorder] Stable [with] few symptoms," treated with Xanax (Tr. at 1617.) This was the record cited by the ALJ. (Tr. at 22.) These records also reflect ongoing coordination with Dr. Campbell, who was prescribing suboxone and managing Plaintiff's substance abuse treatment.

[7] Plaintiff also contends that the ALJ erred in declining to give any weight to a psychiatric consultative examination by Dr. Villarosa from 2013. However, the ALJ specifically considered that consultative examination but found that "this exam is from before the relevant time for this claim, so [the ALJ] has not given any weight to this examination." (Tr. at 23.) That consultative examination was obtained as part of Plaintiff's prior application for benefits, which resulted a final decision in August 2015. In that August 2015 decision, the ALJ considered Dr. Villarosa's assessment as follows:

> [The 2015 ALJ] gives partial weight to Dr. Villarosa' mental assessment. He opined: "[The claimant] was able to retain and follow simple directions. He would likely have significant problems dealing with stress and pressures associated with day-to-day work activity." The opinion deserves partial weight because, as Dr. Skoll pointed out, the "evidence does not support [that[ he would have 'significan[t] problems dealing with stress . . . "

(Tr. at 140 (internal citations omitted). That decision is final and was appropriately considered and weighed by the ALJ in the present determination pursuant to Albright and Social Security Acquiescence Ruling 00-1(4).

17

Ultimately, the ALJ considered Plaintiff's mental health evidence at length, and did not rely simply on a single reference to Plaintiff being "stable," but rather considered the treatment records in context, ultimately concluding that Plaintiff's mental impairments would be accounted for "with simple tasks and limited interactions with others" as reflected in the RFC. Substantial evidence supports this determination, and the Court will not re-weigh the evidence or otherwise substitute its judgment for that of the ALJ.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #19] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 25th day of February, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

(Tr. at 23.) In addition, the ALJ considered the medical records for the time period at issue on the present claim, including the substantial number of substance abuse/mental health treatment records from Dr. Campbell noted above, so there was not a lack of evidence covering the relevant period. The ALJ's reasoning is sufficiently evident, and the decision reflects that the ALJ considered and explained her treatment of the 2013 consultative examination, and that determination is supported by substantial evidence.